UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC LEADERSHIP COUNCIL,
INC.
600 Pennsylvania Avenue SE, Suite 400
Washington, D.C. 20003

        Plaintiff,

   v.

UNITED STATES OF AMERICA
555 Fourth Street NW
Washington, DC 20530,

        Defendant.

CIVIL ACTION NO.

## COMPLAINT

Plaintiff Democratic Leadership Council, Inc. ("DLC") hereby files this complaint.

### Introduction

1. This is an action for the recovery of federal income tax and interest erroneously and illegally assessed and collected.

2. Plaintiff seeks a determination that the revocation by the Internal Revenue Service ("IRS") of DLC's tax-exempt status for the period between January 1, 1997 and December 31, 1999 was erroneous, and a recovery of federal income tax for the taxable years ending December 31, 1997; December 31, 1998; and December 31, 1999.

3. The DLC was founded by Democratic federal and state elected officials who were concerned with the direction of policy development and debate within their political party and in the country. These officials, along with other

supporters, organized the DLC to improve upon and introduce innovative thought into the development of policy on a host of vital economic, social and foreign policy issues. At the heart of DLC's approach, as it announced at the time and pursued in the years since, has been: the promotion of opportunity for all; individual responsibility; and fostering a new sense of community.

4. DLC policy proposals over the years have attracted a wide bipartisan national audience and have inspired the adoption of a range of proposals affecting national policy. Examples include national service, work-based welfare reform, charter schools, community policing, an expanded earned-income tax credit, and market incentives for environmental protection.

5. DLC is not, and never has been, a political party organization. It receives no support from any committee of the Democratic Party, and it is not affiliated with any such Democratic Party organization in any way.

6. The Articles and By-Laws of DLC specify that it shall not intervene in campaigns on behalf of any public candidate. The By-Laws prohibit any of DLC's officers and directors from supporting or opposing any candidates while acting on behalf of DLC.

7. DLC has never endorsed any candidate for public office, nor has it ever intervened in any political campaign for public office.

8. On November 8, 1985, DLC filed an Application for Recognition of Exemption under § 501(c)(4) of the Internal Revenue Code ("the Code"), under employer identification number 52-1384530.

9. On February 7, 1986, the IRS recognized DLC as an exempt organization under I.R.C. § 501(c)(4).

10. DLC's Application for Recognition of Exemption contained no misstatements of fact.

11. DLC's activities have been conducted in good faith, in accordance with the representations in its Application.

**Jurisdiction and Venue**

12. This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(1).

13. Section 7422 of the Internal Revenue Code authorizes Plaintiff to bring suit to recover tax erroneously or illegally assessed.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(a)(2), as the Plaintiff's principle office is in this judicial district.

**Factual Background**

15. In 1999, the IRS notified DLC that it was examining the DLC's return for the tax year ending December 31, 1997.

16. On June 28, 2002, the IRS issued a Proposed Adverse Action Letter revoking the DLC's exemption under I.R.C. § 501(c)(4), effective January 1, 1997 through December 31,1998.

17. The Proposed Adverse Action Letter was based entirely on an allegation that DLC "primarily benefited affiliated New Democrat elected officials, with a secondary benefit to the Democratic Party, rather than primarily benefiting the community as a whole."

18. The IRS did not allege that DLC's primary purpose was the direct or indirect participation in political campaigns on behalf of or in opposition to any candidate for public office.

19. On July 26, 2002, DLC appealed the Proposed Adverse Determination, and requested a hearing.

20. On August 6, 2002, the IRS informed DLC that it would not consider the appeal, due to the proximity of the expiration of the limitations period.

21. On August 7, 2002, the IRS issued a Notice of Deficiency, requiring that DLC file Forms 1120 for the years 1997 and 1998 and pay a tax of $3,839.00 and $5,264.00, respectively, for those two taxable years.

22. On November 29, 2002, the IRS sent DLC a Notice of Tax Due for $5,510.24 for tax year 1997; and $6,985.82 for tax year 1998.

23. On February 24, 2003, DLC paid $5,510.24 for payment of tax assessed plus interest for the tax year 1997; and $6,985.82 for payment of tax assessed plus interest for the tax year 1998.  The payments were made to the IRS office in Washington, D.C.

24. Also on February 24, 2003, DLC submitted a claim for a refund for taxable years 1997 and 1998, in the form of a Form 1120 with statements of grounds and reasons attached.  These claims were resubmitted on July 23, 2003, due to IRS representations that the original claims had been misplaced.

25. On April 16, 2003, DLC paid additional amounts of $134.21 and $176.14 for interest accrued on the tax due for taxable years 1997 and 1998, respectively.

26. On July 28, 2003, the IRS denied the DLC's claim for a refund for tax year 1997 and 1998.

27. On August 1, 2003, the IRS issued an Examination Report that proposed revocation of DLC's exempt status for taxable year 1999 and found a tax deficiency of $5,595.00.

28. The Examination Report was based entirely on an allegation that DLC "primarily benefited affiliated New Democrat elected officials, with a secondary benefit to the Democratic Party, rather than primarily benefiting the community as a whole."

29. The IRS did not allege that DLC's primary purpose was the direct or indirect participation in political campaigns on behalf of or in opposition to any candidate for public office.

30. On August 28, 2003, DLC appealed the Examination Report issued August 1, 2003.

31. On October 30, 2003, the IRS sent a Notice of Deficiency to DLC for taxable year 1999, in the amount of $5,595.00.

32. On March 22, 2004, DLC paid $7276.50 for payment of tax assessed for the tax year 1999 plus interest.  The payments were made to the IRS office in Washington, D.C.

33. Also on March 22, 2004, DLC submitted a claim for a refund for taxable year 1999, in the form or Form 1120 with statements of grounds and reasons attached.

34. On April 5, 2004, the IRS denied the DLC's appeal for tax year 1999.

35. The IRS has not revoked DLC's tax-exempt status for any time period subsequent to December 31, 1999.

**Legal Background**

**Plaintiff Primarily Benefits the Community as a Whole**

36. The IRS finding that DLC primarily benefits New Democrat elected officials, and the Democratic Party as a whole, is erroneous.

37. In its Application for Recognition of Exemption, which the IRS reviewed and approved, DLC described the leadership of its organization as "certain elected officials and others who were concerned with the formulation of national policy and with the direction of policy debate within the Democratic Party." The Application stated the organization's purpose to be "to improve the overall contribution of Democratic leaders, in the federal and state

government, to national policy debate, and to urge upon both the party and the general public new and innovative approaches to policy." The DLC has been operating for this purpose for almost twenty years, and the IRS, in acting to revoke its exemption, has made no claim to the contrary.

**DLC Does Not Primarily Benefit New Democrat Officials**

38. The IRS finding that DLC primarily benefits New Democrat elected officials is erroneous. There is no defined subset of officials that DLC supports, nor was it formed to serve a defined subset of officials. DLC welcomes all Democratic officials as members – as well as members who are neither Democrats nor elected officials – if they support DLC's public policy mission.

39. To the extent that DLC works directly with and under the leadership of Democratic Party officials, it does so solely in furtherance of the broad community benefit served by its work on public policy. Elected officials provide DLC with public visibility and make possible the government and policy development that bears directly on the organization's work.

**DLC Does Not Primarily Benefit the Democratic Party**

40. DLC is not a committee of the Democratic Party. It is not recognized as such by either the national or any other committee of the Democratic Party, and it has no legal standing as such under any provision of national, state or local law.

41. The DLC has often developed and promoted proposals at variance with the then-prevailing positions or preferences of the national Democratic Party.

42. All of DLC's policy programs are conducted for the benefit of the public and available without restriction to anyone who becomes a DLC member. None are limited to any audience defined by their affiliation with the Democratic Party.

43. DLC does not coordinate its activities with the Democratic Party.

**The IRS Conceded the Error of Private Benefit Analysis in Litigation against Ohio DLC**

44. The IRS expressly conceded the error of its "private benefit" analysis, as presented in this action, when it agreed to a stipulated decision in the Ohio DLC case.

45. On June 20, 2000, the IRS revoked the exemption of the Ohio Democratic Leadership Council ("Ohio DLC") under section 501(c)(4), effective January 1, 1995.  The revocation was based on a finding that Ohio DLC was "operated primarily to benefit a small group rather than the community as a whole."

46. The finding against Ohio DLC was the first step toward revocation of the national DLC's exemption, and the rationale asserted for the Ohio DLC revocation was identical to that advanced by the IRS in advising DLC that its exemption would also be revoked.

47. On September 15, 2000, Ohio DLC petitioned the United States Tax Court for a determination that the revocation was erroneous.

48. On June 18, 2001, the Tax Court entered a stipulated decision that rescinded the IRS's revocation of Ohio DLC's exemption.  The IRS stipulated that "specifically petitioner's activity did not impermissibly confer a private benefit on any person inconsistent with its I.R.C. § 501(c)(4) status."

**Many 501(c)(4) Organizations Operate With IRS Sanction in a Similar Fashion**

49. The IRS's position is inconsistent with its longstanding position, the language of the law, and uncontradicted Congressional intent on the availability of tax exemption under § 501(c)(4) of the Code.   Never has the IRS claimed, nor by the terms of the Code could it claim, that policy development is inconsistent

with (c)(4) exemption if it is provided to the public by individuals affiliated with a specific political party.

50. The Log Cabin Republicans is a section 501(c)(4) organization, dedicated to the promotion within the Republican Party and the country of policies favoring equal rights for gay Americans. The Log Cabin Republicans have maintained this exemption for years with the prior approval of the IRS and without known objection at any time since exemption was granted.

51. The Ripon Society is a section 501(c)(4) organization, self-described as "seeking to be [the] conscience" of the Republican Party in the analysis and promotion of sound public policies. The Ripon Society has maintained this exemption for years with the prior approval of the IRS and without known objection at any time since exemption was granted.

52. The National Rifle Association is also a section 501(c)(4) organization whose activities include the support of candidates and officials who agree with its position on the scope of the Second Amendment. It maintains a separate political action committee that raises monies from its members for the purpose of making contributions to candidates for public office. It also pursues the defense, in the nation's public policies, of its view of the scope of Second Amendment protections. The National Rifle Association has maintained this exemption for years with the prior approval of the IRS.

53. If DLC is not tax-exempt as a social welfare organization under section 501(c)(4), there is no other tax-exempt alternative available in the Code. DLC cannot be tax-exempt under section 527, because it is not organized or operated for the purpose of influencing elections or appointments.

**Count I:  Private Benefit: Refund for Taxable Year Ending December 31, 1997**

54. Plaintiff incorporates by reference paragraphs 1 through 53 as if fully set forth here.

55. Throughout the taxable year ending December 31, 1997, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

56. The Commissioner has erroneously revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1997 on the basis of a finding that Plaintiff primarily benefited certain elected officials and the Democratic Party.

57. Plaintiff has overpaid its federal income tax for taxable year 1997 in the amount of $5,644.45.

**Count II: First Amendment: Refund for Taxable Year Ending December 31, 1997**

58. Plaintiff incorporates by reference paragraphs 1 through 57 as if fully set forth here.

59. Throughout the taxable year ending December 31, 1997, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

60. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1997 in violation of the First Amendment of the United States Constitution.

61. Plaintiff has overpaid its federal income tax for taxable year 1997 in the amount of $5,644.45.

**Count III: Equal Protection: Refund for Taxable Year Ending December 31, 1997**

62. Plaintiff incorporates by reference paragraphs 1 through 61 as if fully set forth here.

63. Throughout the taxable year ending December 31, 1997, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

64. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1997 in violation of the Fifth Amendment of the United States Constitution.

65. Plaintiff has overpaid its federal income tax for taxable year 1997 in the amount of $5,644.45.

**Count IV: Private Benefit: Refund for Taxable Year Ending December 31, 1998**

66. Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth here.

67. Throughout the taxable year ending December 31, 1998, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

68. The Commissioner has erroneously revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1998 on the basis of a finding that Plaintiff primarily benefited certain elected officials and the Democratic Party.

69. Plaintiff has overpaid its federal income tax for taxable year 1998 in the amount of $7161.96.

**Count V: First Amendment: Refund for Taxable Year Ending December 31, 1998**

70. Plaintiff incorporates by reference paragraphs 1 through 69 as if fully set forth here.

71. Throughout the taxable year ending December 31, 1998, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

72. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1998 in violation of the First Amendment of the United States Constitution.

73. Plaintiff has overpaid its federal income tax for taxable year 1998 in the amount of $7161.96.

**Count VI: Equal Protection: Refund for Taxable Year Ending December 31, 1998**

74. Plaintiff incorporates by reference paragraphs 1 through 73 as if fully set forth here.

75. Throughout the taxable year ending December 31, 1998, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

76. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1998 in violation of the Fifth Amendment of the United States Constitution.

77. Plaintiff has overpaid its federal income tax for taxable year 1998 in the amount of $7161.96.

## Count VII: Private Benefit: Refund for Taxable Year Ending December 31, 1999

78. Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth here.

79. Throughout the taxable year ending December 31, 1999, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

80. The Commissioner has erroneously revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1999 on the basis of a finding that Plaintiff primarily benefited certain elected officials and the Democratic Party.

81. Plaintiff has overpaid its federal income tax for taxable year 1999 in the amount of $7276.50.

## Count VIII: First Amendment: Refund for Taxable Year Ending December 31, 1999

82. Plaintiff incorporates by reference paragraphs 1 through 81 as if fully set forth here.

83. Throughout the taxable year ending December 31, 1999, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

84. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1998 in violation of the First Amendment of the United States Constitution.

85. Plaintiff has overpaid its federal income tax for taxable year 1999 in the amount of $7276.50.

**Count IX: Equal Protection: Refund for Taxable Year Ending December 31, 1999**

86. Plaintiff incorporates by reference paragraphs 1 through 85 as if fully set forth here.

87. Throughout the taxable year ending December 31, 1999, Plaintiff has operated under the legal requirements of section 501(c)(4) of the Internal Revenue Code.

88. The Commissioner has illegally revoked Plaintiff's tax-exempt status under section 501(c)(4) for taxable year 1999 in violation of the Fifth Amendment of the United States Constitution.

89. Plaintiff has overpaid its federal income tax for taxable year 1999 in the amount of $7276.50.

**Prayer for Relief**

WHEREFORE, Plaintiff DLC seeks a judgment:

a. Finding that the IRS erroneously and illegally revoked DLC's tax-exempt status for the period between January 1, 1997 and December 31, 1999;

b. Awarding $20,082.91, plus interest and costs allowed by law, including the award of reasonable litigation costs incurred in this proceeding under I.R.C. § 7430; and

c. Granting such other and further relief as the Court deems proper.

Respectfully Submitted,

Dated: May 27, 2005

Robert F. Bauer (D.C. Bar No. 938902)
Marc E. Elias (D.C. Bar No. 442007)
Ezra W. Reese (D.C. Bar No. 487760)
PERKINS COIE
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2011
(202) 628-6600

Attorneys for Democratic Leadership Council, Inc.

### Jury Demand

Plaintiff hereby demands a jury on all issues triable by a jury.

Dated: May 27, 2005

Robert F. Bauer (D.C. Bar No. 938902)
Marc E. Elias (D.C. Bar No. 442007)
Ezra W. Reese (D.C. Bar No. 487760)
PERKINS COIE
607 Fourteenth Street, N.W.
Washington, D.C. 20005-2011
(202) 628-6600

Attorneys for Democratic Leadership Council, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC LEADERSHIP COUNCIL,
INC.
600 Pennsylvania Avenue SE, Suite 400
Washington, D.C. 20003

                Plaintiff,

     v.

UNITED STATES OF AMERICA
555 Fourth Street NW
Washington, DC 20530,

               Defendant.

CIVIL ACTION NO.

## CERTIFICATE OF SERVICE

       I hereby certify that on this 27th day of May, 2004, I caused to be served on the
United States Attorney General for the District of Columbia, by hand delivery, and to the
Attorney General of the United States, by certified mail, a copy of the Democratic
Leadership Council, Inc. Complaint and a copy of the summons.

                 Respectfully Submitted,

Dated: May 27, 2005

                 Robert F. Bauer (D.C. Bar No. 938902)
                 Marc E. Elias (D.C. Bar No. 442007)
                 Ezra W. Reese (D.C. Bar No. 487760)

PERKINS COIE
607 Fourteenth Street, N.W.
Washington, D.C.  20005-2011
(202) 628-6600

Attorneys for Democratic Leadership Council, Inc.