# Exhibit K

Empower America                              Michael Seto
1776 I Street, N.W.
8th Floor                                    (202) 622-6477
Washington, D.C.  20006
                                             CP:E:EO:T:3

                                             FEB 2 1 1997

        Employer Identification Number:  52-1804185
                      Key District:  Southeast (Baltimore, MD)

Dear Applicant:

     We have considered your application for recognition of
exemption from federal income tax under section 501(a) of the
Internal Revenue Code as an organization described in section
501(c)(4).  Based on the information submitted, we have concluded
that you do not qualify for exemption under that section.  The
basis for our conclusion is set forth below.

     The information provided indicates that you were
incorporated on February 1, 1993 in the State of Virginia.  Your
purpose, according to your Articles of Incorporation, is:

        [t]o advance a conservative reform agenda by reinvigorating
        and empowering traditional institutions such as the family;
        building strong, effective coalitions at the local level;
        mobilizing citizen response on key issues through
        conferences, speeches, ballot questions, state referenda;
        supporting legislation on local, state and national levels;
        and other such means as afforded to corporations established
        for the purposes permitted pursuant to Section 501(c)(4) of
        the United States Internal Revenue Code of 1986, as amended.

You described yourself, in the August 26, 1993 invitation letter
to a seminar, as a conservative "grass-roots" organization.  You
were founded, according to this same letter, by Jack Kemp,
William Bennett, Jeane Kirkpatrick, and Vin Weber.

     The officers of your organization include three co-
directors, Mr. Kemp, Mr. Bennett, Mrs. Kirkpatrick; and a
chairman and vice chairman, Mr. Thomas Weisel and Mr. Vin Weber,
respectively.  Mr. Kemp was the candidate for the Vice-Presidency
in former Senator Dole's Republican Party presidential campaign,
former secretary of the Department of Housing and Urban
Development in the Bush administration, preceded by eighteen
years of service in the House of Representatives.  Mr. Bennett
served as the director of the Office of National Drug Control
Policy ("Drug Czar") in the Bush administration and as the

USA 3073

- 2 -

Empower America

secretary of the Department of Education and Chairman of the National Endowment for the Arts in the Reagan administration. Mrs. Kirkpatrick served as United Nation Ambassador in the Reagan administration.

Your board of directors, the governing body, is comprised of nineteen members. They include the above mentioned co-directors as well as the following individuals: Mr. Newt Gingrich, Republican Party leader and Speaker of the House of Representatives; Senator Trent Lott, Republican Party leader and Majority Leader of the Senate. Other board members include Michael Novak, Donald Rumsfeld and Malcolm ("Steve") Forbes, former candidate for the Republican Party presidential nomination. Lamar Alexander, former candidate for the Republican Party presidential nomination, was a prior board of director member.

You are not a membership organization, according to your Articles of Incorporation. Members of the general public may become "associates" in your organization upon payment of an annual $25.00 fee. An associate does not have any voting rights or an administrative voice in the affairs of your organization, but he or she does receive quarterly newsletters, mailings, public policy booklets, and invitations to attend and participate in your activities. You solicit the general public to become associates via telephone calls and letters. Mr. Kemp's name is used in the telephone script and solicitation letter to attract potential associates.

You state that you engage in non-partisan public advocacy on issues "based upon the principles of economic growth, through lower taxes, free trade and entrepreneurial capitalism; strong U.S. leadership in the world; and cultural renewal through the strengthening of the family and community." You also state that you engage in research of various issues and proposed solutions based on careful thought, analysis and dialogue.

You engage in the following public policy advocacy activities: publish newsletters; publish policy position booklets and candidate briefing books; issue briefings on public policy issues; republish speeches and lectures given by prominent politicians; hold conferences and seminars; lobby the general public via radio and television advertisements, and conduct "candidate schools" for those seeking public office.

You publish quarterly a newsletter called Highlights that is distributed to members and the general public. Each issue contains articles discussing public policy issues, and these articles are written by prominent Republican Party politicians

023 0030

USA 3074

- 3 -

Empower America

such as your co-directors.  The newsletters also contain articles and brief commentaries chiding the Clinton administration's policies (e.g. "Clinton's First 100 Days" Vol. 1 No. 1, June 1993; "Warning: Tax Hikes Ahead [-] Clinton Budget is mined with more taxes, new spending" Vol. 1 No. 2, Sept. 1993; "Small business owners will be the victims of Bill Clinton's new 36% tax bracket, not the rich" Vol. 1 No. 1, June 1993) and endorsements of policy positions of the Republican Party.  For example, the Republican Party's political agenda called "Contract with America" was endorsed by you in your Vol. III No. 1, Winter 1995 issue of Highlights.  Your newsletters also advertised for sale merchandise produced by your co-directors such as Mr. Kemp's monthly newsletter, The Jack Kemp Letter and Mr. Bennett's book, The Index of Leading Cultural Indicators.  Speeches given by prominent Republican Party politicians, such as Newt Gingrich, the Speaker of the House (see Vol. III No. 2, Fall 1995 issue of Highlights) were also published in the newsletters.

You publish and distribute to the general public issue briefings.  The briefings contain your opinions on particular issues, criticisms of the Clinton administration's policies and endorsements of policies similar, if not identical, to those expressed by the Republican Party.  For example, in your Fall 1994 briefing, you criticized the Clinton administration's tax and budget policies and endorsed the tax policies of Republican Party Congressman Dick Armey (the current Majority Leader of the House of Representatives).  Other topics covered by your briefings include "The Politics of School Choice" (Spring 1994 issue), "The Clinton Health Care Plan: The Making of a Crisis" (March and Fall 1994 issues), "Injustice Everywhere: Crime and Punishment in America" (Spring 1994 issue).  You also republish and distribute speeches of prominent Republican Party politicians such as Mr. Kemp (speech on "Cultural Renaissance") and Governor Christine Todd Whitman of New Jersey (budget address to the New Jersey state legislature).

You hold seminars and conferences throughout the United States.  The topics of the seminars and conferences include the following: "The assault on Individual Liberty: The Clinton Administration and the Growth of Entitlement Programs" (June 1, 1994, San Francisco); "50th Anniversary of Bretton Woods: Why The World Needs A New Monetary System" (September 8 1994, Washington, D.C.); and "Devolution of Government" (May 24, 1995, Phoenix).  Your co-directors were the main speakers at these events.  It appears that many of these topics are similar to those policy positions of the Republican Party.

You also express your opinions and criticisms on particular actions of the Clinton administration via public policy booklets

- 4 -

Empower America

distributed to the public.  Your opinions and criticisms are
similar to the political criticism expounded by the Republican
Party.  For example, your April 28, 1993 booklet is devoted to
<u>The Credibility Gap: The First One Hundred Days of The Clinton
Administration</u>.  In that booklet, you analyzed the Clinton
administration's first 100 days in the following policy areas:
the economy (taxes, jobs, etc.); social policy (Crime, Drug, Gays
in the Military, abortion, welfare reform, etc.); foreign policy
(Bosnia, Russia).  You then compared President Clinton's
positions on these issues, ante and post election, and criticized
the perceived inconsistency.  Specifically you state "[t]he first
hundred days of the Clinton Administration have continued a
pattern of easily abandoned commitments that have characterized
Bill Clinton's political career."

     You also lobby the public against the policies of the
Clinton administration via the use of radio and television
advertisements and news releases.  The advertisements and news
releases are used to advocate your policies or assail those of
the Clinton administration.  Advertisements were placed in
strategic locations and times, and were usually 30 seconds long.
The topics of the radio advertisements included, "Clinton's 100
days," "Opposition to Clinton's Tax Increases," "Alternative to
Clinton Budget and Tax Increase," "Bosnia," etc.  These
advertisements urged listeners to support your views.  The
speakers for these advertisements were usually Mr. Kemp or Mr.
Bennett.  Press releases were also used for such purposes and
involved the same topics.

     You hold candidate schools where you educate candidates for
public offices on major issues from a conservative perspective.
As stated in your school brochure, the candidate schools "are
designed to help candidates for local, state, and national office
to develop a comprehensive agenda and coherent message based on
the principles of individual and community empowerment."  You
state that the candidate schools are open to all candidates
regardless of political persuasion or ideology.

     Each candidate school is a day long event held in a
different city (e.g. Washington, D.C., Atlanta, Detroit, New York
City, thus far).  Each candidate school uses a formal class room
setting with instructors and briefing books.  The instructors are
policy experts, opinion-makers and prominent politicians
connected to the Republican Party or conservative organizations.
For example, Mr. Kemp, Mrs. Kirkpatrick, Mr. Bennett, Congressman
Newt Gingrich, Republican Governor George Allen of Virginia,
former Bush administration Attorney General William Barr, Bret
Schundler (Republican mayor of Jersey City) were speakers and
instructors (see January 11, 1994 candidate school brochure).

- 5 -

Empower America

The candidate school is conducted in a discussion format.  Each participant is given a comprehensive briefing book that includes a series of position papers containing your views on health care, polling results, welfare, etc.

You state that you have no knowledge regarding the establishment, existence or operation of any political action committee (hereinafter "PAC") relating to the candidacy of Mr. Kemp or any of the other officers of your organization.  You understand that Mr. Kemp was the honorary chair of an Illinois state PAC.  You state that in the event any of your primary officers or speakers announces a candidacy for public office, you will require him or her to sever ties with you.

Section 501(c)(4) of the Internal Revenue Code (hereinafter "Code") provides for the exemption from federal income tax of organizations not organized for profit but operated exclusively for the promotion of social welfare.

Section 1.501(c)(4)-1(a)(2)(i) of the Income Tax Regulations (hereinafter "Regulations") provides that an organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community.

Section 1.501(c)(4)-1(a)(2)(ii) of the Regulations provides that the promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office.

Rev. Rul. 60-193, 1960-1 C.B. 195, concludes that an organization created to encourage greater participation in governmental and political affairs qualifies for recognition of exemption under section 501(c)(4) of the Code.  Activities of the organization included seminars and workshops held on campuses of colleges and universities.  The subject matter of these seminars relates to the American political system.  All lecturers, including academic political scientists and political leaders from the local and national levels, were required to maintain certain technical standards and were not allowed to advocate for any particular political group.  Seminars and workshops were moderated by permanent staff personnel of the organization in order to prevent the program from becoming partisan in character.

Rev. Rul. 73-306, 1973-2 C.B. 179, provides that an organization formed for the purpose of promoting the common interest of tenants who reside in an apartment complex did not qualify for exemption under section 501(c)(4) of the Code.  Any person regularly living in the complex is eligible for

- 6 -

Empower America

membership.  The organization represented its member-tenants in
negotiations with the management of the complex in order to
secure better maintenance and services, and reasonable rentals.
This revenue ruling concludes that this organization was operated
to benefit its members and was not primarily engaged in
activities that promote the common good and general welfare of
the community.

In contrast, Rev. Rul. 80-206, 1980-2 C.B. 185, provides
that an organization formed to promote the legal rights of all
tenants in a community qualifies for exemption under section
501(c)(4) of the Code.

Rev. Rul. 73-349, 1973-2 C.B. 179, holds that an
organization formed to purchase groceries for its members at the
lowest possible prices on a cooperative basis is not exempt under
section 501(c)(4) of the Code.  Each member paid for the cost of
food ordered plus a monthly service charge which defrayed the
organization's expenses.  The organization was a cooperative
enterprise for the economic benefit or convenience of its
members.  This revenue ruling states that the organization was
operated primarily for the benefit of members and not to promote
the common good and general welfare of the community.

Rev. Rul. 75-286, 1975-2 C.B. 210, describes an organization
that was formed by the residents of a city block to preserve and
beautify that block, to improve all public facilities within the
block, and to prevent physical deterioration of the block.  Its
activities consisted of paying the city government to plant trees
on public property within the block, organizing residents to pick
up litter and refuse in the public streets and on public
sidewalks within the block, and encouraging residents to take an
active part in beautifying the block by placing shrubbery in
public areas.  Much of the public area improved by the
organization was part of the public roadway lying between the
sidewalk and the street in front of private property owned by
members of the organization.  Membership in the organization was
restricted to residents of the block and those owning property or
operating businesses there.

This revenue ruling concludes that the organization did not
qualify for exemption under section 501(c)(3) of the Code but did
qualify for exemption under section 501(c)(4).  It states that
because the activities enhanced the value of the members'
property rights, the organization served the private interests of
its members and did not qualify for exemption under section
501(c)(3).  It states also states that while the organization's
activities were benefiting its members there was sufficient
benefit conferred upon the community as a whole.  Although

USA 3078

- 7 -

Empower America

private benefit did exist to the members, the primary benefit was to the community. Therefore, the organization was not operated primarily for the benefit of members, but primarily to promote social welfare.

In Commissioner v. Lake Forest, Inc., 305 F.2d 814 (4th Cir. 1962), a corporation was organized for the purpose of purchasing a government housing project and converting it to cooperative, nonprofit housing for its members. Membership in the corporation was established by the purchase of a corporate share which entitled the purchaser to an apartment unit. The court held that the organization was not described in section 501(c)(4) of the Code because the operation was a private self help enterprise with only incidental benefit to the community.

In Contracting Plumbers Cooperative Restoration Corp. v. United States, 488 F.2d 684 (2d Cir. 1973), cert. denied, 419 U.S. 827 (1974), plumbers working in New York City were responsible for the cuts they made in the city streets. Prior to the organization's existence, the city had repaired the cuts and billed the plumbers individually. This system proved to be highly inefficient. The organization was formed as a cooperative in order to restore the city streets. It only repaired cuts made by its members. The joint effort of the plumbers reduced their liability and their expenses. While the court found the program to be highly beneficial, it concluded that the organization principally served the private economic interests of its members and, thus, could not be considered exempt under section 501(c)(4) of the Code.

Rev. Rul. 66-256, 1966-2 C.B. 210, describes an organization that was formed to bring about a fair and openminded consideration of social, political, and international questions by the promotion and sponsorship of a public forum at which debates and lectures were conducted. The organization invited prominent individuals to discuss varying political and social matters of national and community interest. The speakers, in addition to delivering their prepared text, answered questions of those attending. The other part of the organization's program involved the sponsorship of debates. Individuals representing opposing viewpoints were invited to debate particular topics. The debates were conducted in accordance with carefully drawn rules. Frequently, the persons invited to lecture or debate were controversial and occasionally there was opposition to their appearance. None of the programs or activities of the organization involved the participation or intervention in any political campaigns of candidates for public office.

USA 3079

- 8 -

Empower America

The revenue ruling states that the presentation of public lectures, forums, or debates is a recognized method of educating the public. The fact that the presence of the invited speaker or his opinions may precipitate controversy within the community does not adversely affect the status of an organization whose primary purpose is to provide a forum for speakers. Consequently, the organization qualified for exemption under section 501(c)(3).

Rev. Rul. 76-456, 1976-2 C.B. 151, describes an organization that was formed for the purpose of elevating the standards of ethics and morality that prevail in the conduct of campaigns for election to public office at the national, state, and local levels. On a nonpartisan basis the organization collected, collated, and disseminated information concerning general campaign practices through the press, radio, television, mail, and public speeches. In addition, the organization furnished 'teaching aids' to political science and civics teachers to help stress the need for ethical conduct in political campaigns. The organization proposed a Code of fair campaign practices. Although need for the Code was extensively publicized, the organization did not solicit the signing or endorsement of the Code by candidates for political office.

The revenue ruling states that the organization was instructing the public on subjects useful to the individual and beneficial to the community within the meaning of section 1.501(c)(3)-1(d)(3) of the regulations by encouraging voters to concern themselves with fair as well as unfair practices encountered in political campaigns. This was done, on a nonpartisan basis, so that citizens could increase their knowledge and understanding of our election processes and participate more effectively in their selection of government officials. Consequently, the organization was operated exclusively for educational purposes and thus qualified for exemption under section 501(c)(3) of the Code.

Rev. Rul. 80-282, 1980-2 C.B. 178, describes an organization whose activities included the publication of Congressional incumbents' voting records on selected issues in a non-partisan newsletter. The revenue ruling observes that the format and content of the publication were not neutral because the publication reported each incumbent's votes and his\her views on selected legislative issues and indicated whether that incumbent supported or opposed the organization's view. However, the voting records of all incumbents were presented and candidates for reelection were not identified. No comment was made on an individual's overall qualifications for public office, no statements expressly or impliedly endorsed or rejected any

USA 3080

- 9 -

Empower America

incumbent as a candidate for public office, and no comparison of
incumbents with other candidates were made.  The organizations
noted the inherent limitations of judging the qualifications of
an incumbent on the basis of certain selected votes by stating
the need to consider such unrecorded matters as performance on
subcommittees and constituent services.  Furthermore, the
organization did not widely distribute its compilation of
incumbents' voting records.  The publication was distributed to
the organization's normal readership, numbering only a few
thousand nationwide.  This resulted in a very small distribution
in any particular state or Congressional district.  No attempt
was made to target the publication toward particular areas in
which elections were occurring nor to time the date of
publication to coincide with an election.  The revenue ruling
concludes that the organization was not engaged in prohibited
political campaign activity.

    In <u>American Campaign Academy v. Commissioner</u>, 92 T.C. 1053
(1989), an organization was formed for charitable and educational
purposes.  The organization's primary activity was to operate a
school.  The school trained individuals for careers as political
campaign professionals.  The school maintained a regularly
scheduled curriculum, a regular faculty and a full-time enrolled
student body.  Prior to the formation of the organization, the
National Republican Congressional Committee (NRCC) sponsored
programs designed to train candidates and to train and
subsequently place campaign professionals in Republican
campaigns.  The organization stated that it was an outgrowth of
the programs operated by the NRCC.  NRCC contributed the physical
assets, such as furniture and computer hardware, to the
organization.  Two of the organization's six full-time faculty
were previously involved in the NRCC's training program.  One of
the organization's three initials directors was the executive
director of the NRCC.  The organization did not train candidates
or participate in, or intervene in, any political campaign on
behalf of any candidate.  Neither did the organization engage in
any activities tending to influence legislation.  Applicants were
required to provide the organization with professional
references.  While applicants were not required to formally
declare their political affiliation to attend the organization's
school, such affiliation could be deduced from the campaign
experiences and political references contained in the
applications.  Graduates of the school were employed by various
Republican organizations.  No graduate was known to have
affiliated with any domestic political party other than the
Republican Party.

    The Court concluded that the organization's activities
benefited the private interests of Republican entities and

- 10 -

Empower America

candidates more than incidentally.  The organization, thus, served a substantial nonexempt purpose.  Although the school had a legitimate educational program, the Court held that the school conducted its educational activities with the partisan objective of benefiting the interests of the Republican Party as evidenced by:

    1) the composition of the school's board of directors

    2) the failure of the school to counterbalance the Republican party focus of its curriculum with comparable studies of the Democratic or other political parties,

    3) the incorporation of the school by the General Counsel of the National Republican Congressional Committee, an unincorporated association comprised of Republican members of the House of Representatives; and,

    4) a lack of showing by the school that its graduates served in Congressional and Senatorial campaigns of candidates from both major political parties in substantial numbers.

## ANALYSIS

A.  Promoting Social Welfare

    In order to qualify for recognition of exemption under section 501(c)(4) of the Code, an organization must be primarily engaged in activities that promote social welfare.  The promotion of social welfare may include activities that educate the public or lobby public officials or both.  Exemption is not dependent on the point of view of the educational material or the issue being lobbied.  In contrast to lobbying and educational activities, partisan political activity does not promote social welfare as defined in section 501(c)(4).  Such activity promotes the interests of the one political faction.  An organization engaging in such activity is engaged not merely in the clash of ideas, but in a contest for power.

    Based on the information you submitted, it appears that you are a partisan issues-oriented organization.  Specifically, your activities are designed to promote the electoral interests of the Republican Party and politicians affiliated with the Republican Party.  This partisanship is exhibited in the key officers and personnel that founded and operate your organization.  For example, the founders of your organization are prominent Republican Party politicians (Mr. Kemp, Mr. Bennett, Ms. Kirkpatrick and Mr. Weber).  Many members of your board of directors are prominent Republican Party politicians such as Mr.

- 11 -

Empower America

Gingrich, the Speaker of the House and Mr. Lott, Majority Leader of the Senate and Mr. Forbes. Your board of directors has not been expanded to include non-political and non-partisan individuals. In effect, the leadership and management of and decision-making for your organization resides with individuals affiliated with the Republican Party. Although you have associate members, they do not have any role or voice in the operation of your affairs. Thus, the authority to administer and direct your organization is vested in individuals with strong political ties to the Republican Party.

This partisanship is also exhibited in the manner in which you conduct your activities. Your public communications, e.g., newsletters, position booklets, issue briefings, radio and television advertisements, appear to be partisan. In your public communications you use words and ideas that are associated or identified with the Republican Party. For example, the word "conservative," and the ideas "lowering taxes," "traditional institution of family," "free trade" and "cultural renewal" are closely associated with ideas expounded by the Republican Party. They are, in effect, employed as "code words" used in your messages to support and conjure favorable images of the Republican Party and affiliated politicians without specifically naming the political party or politicians. Conversely, your criticisms are mostly targeted at the Clinton administration (some are not restricted to public policies but rather attacks on his personal character), and it appears that the Clinton administration has become a negative code word in your messages for the Democratic Party. The use of these code words coupled with unfavorable treatment of the Clinton administration and endorsement of policies of the Republican Party (e.g. the Contract with America) lead us to the conclusion that these public communications are designed to promote the political interests of the Republican Party.

Also, while no particular political affiliation is required to attend the candidate schools, your candidate schools are designed to attract candidates affiliated with the Republican Party, given who your instructors, speakers and co-directors are. For example, Republican Congressman and Speaker of the House Newt Gingrich, Republican Governor Christine Todd Whitman of New Jersey, Republican Governor George Allen of Virginia, and former Attorney General William Barr were speakers. It does not appear that opinion-makers or well-known speakers affiliated or identified with other political parties have been lecturers or have been invited as lecturers at your candidate schools. Likewise, the names of Mr. Kemp, Mr. Bennett, Mrs. Kirkpatrick, and Mr. Weber are conspicuously labelled above your name in front of the candidate school application. Because of their prominence

USA 3083

- 12 -

Empower America

as Republican Party politicians, it is unlikely that candidates who are not affiliated with the Republican Party would attend these schools.

Also, many of the speeches and lectures you have republished and distributed to associates and the public have been given by politicians or opinion-makers associated with the Republican Party. Many of the articles in your newsletters also have been written by politicians or opinion-makers associated with the Republican Party.

You claim to be a nonpartisan issues-oriented organization, and we acknowledge that you are issues-oriented. However, you are no less partisan as demonstrated by the manner in which you operate your organization and conduct your activities. Unlike the organization described in Rev. Rul. 60-193, supra, which encouraged participation in the political process by explaining the process on a nonpartisan basis, you were created for the partisan objective of promoting a particular political party. This conclusion is supported by your extensive Republican connections and the manner in which you conduct your activities. Based on the above facts and circumstances, we conclude that, because of your partisan nature, you are not engaged in activities that promote social welfare.

B.    Operating Exclusively to Benefit the Whole Community

An organization exempt under section 501(c)(4) of the Code must be promoting the common good and general welfare of the whole community. Benefitting select individuals or groups, instead of the community as a whole, is contrary to this requirement. See Rev. Rul. 75-286, supra. For example, the tenants' organization described in Rev. Rul. 73-306, supra, is distinguishable from the one described in Rev. Rul. 80-206, supra, in that its activities are directed primarily toward benefitting its member-tenants rather than all tenants in the community. See e.g. Rev. Rul. 73-349; Lake Forest, Inc.; and Contracting Plumbers Cooperative; Restoration Corp., supra. Therefore, a sufficient amount of benefit to select individuals will preclude an organization that would otherwise qualify for exemption from being described in section 501(c)(4).

This private benefit standard is also demonstrated in the American Campaign Academy, supra, and is relevant here. In that case, the court held that an organization created to serve a particular faction in the political spectrum was not exempt under section 501(c)(3) of the Code because its activities benefited the private interest of that particular faction. The private benefit standard used in American Campaign Academy is similar

USA 3084

- 13 -

Empower America

under section 501(c)(4). The difference is in the weighing of
the private benefits (i.e. the amount of private benefits), not
the standard. See e.g. Rev. Rul. 75-286, supra.

The information you submitted clearly indicates that you,
like the organization described in American Campaign Academy, are
operated primarily for the benefit of a select group. This
select group consists of the Republican Party, affiliated
politicians and co-directors. As stated above, your newsletters,
briefings, published speeches, television and radio
advertisements, and conferences are not nonpartisan but are
biased toward the Republican Party. This favorable treatment
benefited the Republican party and its affiliated politicians by
enhancing the electoral and political fortunes of the
aforementioned. These activities generated public support and
enthusiasm for your policies and positions, which were identified
with the Republican Party. In turn, the public support and
enthusiasm could enhance the election or reelection prospects of
Republican Party politicians (i.e. their political careers) and,
thereby, the fortunes of the Republican Party. Your candidate
schools also served to enhance the electoral prospects of the
Republican Party and affiliated politicians because they could
generate party identification with and political support for the
Republican Party.

A review of the information submitted also indicates that
you are operated to benefit your co-directors, specifically Mr.
Kemp and Mr. Bennett, by maintaining their political prominence
before Republican party members, potential Republican voters and
the general public. For example, your spokesmen and speakers at
your conferences and seminars were usually Mr. Kemp and Mr.
Bennett; newspaper articles were written about their political or
economic ideas and philosophies. Mr. Kemp and Mr. Bennett were
the sole spokesmen in your radio advertisements. Fundraising
letters and acknowledgement letters bore Mr. Kemp's signature,
and his name was conspicuously featured on the envelopes for
these letters. The names of Mr. Kemp, Mr. Bennett, Mrs.
Kirkpatrick and Mr. Weber were also conspicuously featured in
your candidate school application. Articles written by them were
featured prominently in your newsletters, and their articles were
attributed while other articles were not. The publicity,
attention, and coverage given by your organization lead us to
conclude that your activities are designed to maintain their
notoriety with the general public and such notoriety would be
very helpful should any of these individuals seek public office
(and indeed Mr. Kemp sought public office as evidenced by his
participation in the 1996 presidential campaign as the Republican
Party nominee for the U.S. Vice-Presidency).

USA 3085

- 14 -

Empower America

### CONCLUSION

In summary, we conclude that you are not operated primarily to promote social welfare because you are a partisan issues-oriented organization and your activities are partisan. In addition, we conclude that your activities also substantially benefitted the Republican Party and politicians affiliated with the Republican Party. Accordingly, you do not qualify for recognition of exemption under section 501(c)(4) of the Code, and you must file federal income tax returns.

You have the right to protest this ruling if you believe it is incorrect. To protest, you should submit a statement of your views, with a full explanation of your reasoning. This statement, signed by one of your officers, must be submitted within 30 days from the date of this letter. You also have a right to a conference in this office after your statement is submitted. You must request the conference, if you want one, when you file your protest statement. If you are to be represented by someone who is not one of your officers, that person will need to file a proper power of attorney and otherwise qualify under our Conference and Practices Requirements.

If we do not hear from you within 30 days, this ruling will become final and copies will be forwarded to your key district office. Thereafter, any questions about your federal income tax status should be addressed to that office.

When sending additional letters to us with respect to this case, you will expedite their receipt by using the following address:

> Internal Revenue Service
> Attn: CP:E:EO:T:3, Room 6137
> 1111 Constitution Ave, N.W.
> Washington, D.C.  20224

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely,

Edward K. Karcher

Edward K. Karcher
Chief, Exempt Organizations
Technical Branch 3

CP:E:EO:T:3
2/20/97

CP:E:EO:T:4/CP:E:EO:R
Karcher/Cover 2/21/97

USA 3086

- 15 -

Empower America

cc:  DD, Southeast (Baltimore, MD)
     Attn: EO Group

cc:  Arthur W. Dickinson
     Trimble & Associates, Ltd.
     11700 Wayzata Boulevard
     Minnetonka, MN  55305

USA  3087