IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEMOCRATIC LEADERSHIP COUNCIL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:05-cv-1067 (JGP) |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) | |

## United States Opposition to Motion to Strike Declaration of Taylor Lincoln

In support of its motion for summary judgment, the United States filed the Declaration of Taylor Lincoln. Mr. Lincoln, a research director, testified that he was given over 12,000 pages of documents produced by the Democratic Leadership Council during discovery and asked to summarize the DLC's activities in those documents. The summary is set forth in two Exhibits to his Declaration. Each statement in the summary has a citation to the document(s) from which the information was taken. The only information in the summary that was not in the documents provided by the DLC are party affiliations of individuals identified in the documents provided by the DLC. Mr. Lincoln consulted the online directory of members maintained by the Congress, or other public sources, to identify an individual's party affiliation during the years at issue. If an individual's party affiliation was not apparent from those sources, Mr. Lincoln did not ascribe one.

2

The DLC has moved to strike Mr. Lincoln's declaration on essentially four grounds. First, the DLC asserts he should have been listed in the United States' initial disclosures as an individual likely to have discoverable information. Second, the DLC contends he should have been identified in response to an interrogatory asking for the identify of individuals with knowledge of facts relevant to the Government's case. Third, the DLC maintains that Mr. Lincoln relies on evidence not submitted into the record or that is not identified or authenticated. And, finally, the DLC argues Mr. Lincoln was not disclosed as an expert witness.

We will deal with each argument in turn, but it is important to note what the DLC has not argued. The DLC has not claimed that the three statements of fact that the United States supported with the Lincoln Declaration are wrong or at issue. The United States made these three statements:

> 17. No Republican elected officials, officials of any other party or independents were featured speakers in the DLC Annual Conferences in 1997, 1998, and 1999. (Lincoln Declar., Ex. 1 at ¶¶ 21, 24, and 26.)
>
> 18. The DLC Annual Conference consisted of three facets: a leadership dinner, a conference, and a reception. (Lincoln Declar., Ex. 1 at ¶15.)
>
> 19. Of the 141 elected officials who said they would attend at least one facet of the Annual Conference festivities in the years studied, at least 139 were Democrats, and the political affiliations of the others could not be determined. (Lincoln Declar., Ex. 1 at ¶ 16, 20, 22, 25, and n.11.)

3

The DLC agreed with each statement, except to object to Lincoln's declaration on the general grounds set forth above. Therefore, in the context of the motion for summary judgment, there is no genuine dispute about the statements.

**As a summary witness without any personal knowledge of any facts beyond what was in documents produced by the DLC in discovery, Mr. Lincoln was not covered by initial disclosures or responsive to the interrogatory**.

Two of the DLC's arguments are essentially the same: Mr. Lincoln was an individual who possessed knowledge of discoverable information.[1] Mr. Lincoln, however, possessed no personal knowledge of discoverable information, except that which the DLC produced to the United States. It would be the height of formalism to list in initial disclosures or in response to a discovery request individuals without knowledge who might gain knowledge only by reviewing documents later produced by the DLC in discovery. The purpose of initial disclosures is to provide the parties information to use in starting discovery. The DLC, for example, listed just two individuals with information in its initial disclosures, Al From and Charles Alston. Yet there were obviously many more who had knowledge of the facts supporting the DLC's claims. The DLC's argument that Mr. Lincoln should have been disclosed as an individual with knowledge of the facts would put a burden on all parties that few

---

[1] Interrogatory No. 6 called for the United States to "[i]dentify every person having knowledge of facts you deem relevant..." to the issues in the case. Of course, read literally, the response would include anyone with knowledge, for example, of Al From's 1998 speech to the Democratic Nucleus Club in Phoenix, Arizona, on April 20, 1998. The request was reasonably read to be those individuals with particular personal knowledge of the events.

4

could ever satisfy, and instead of providing useful preliminary information would require a flood of names and documents in initial disclosures that could rarely be completely examined in a case handled efficiently and speedily.

**The documents summarized in the Lincoln Declaration are available as required by Rule 1006.**

The DLC next contends that Mr. Lincoln relies on evidence not submitted into the record. Documents in summaries must generally be admissible, but the only requirement in Rule 1006 is that the documents be available to the other party. In this case, the documents all came from the DLC in the first place. For example, in the statements about who participated in DLC conferences during the years at issue cited to support the motion for summary judgment, Lincoln summarized documents like an October 27, 1997, titled "Conference RSVPs." Lincoln Declar. At ¶ 20. The document was produced by the DLC in response to discovery, that included a request for documents "relating to your Annual Conference and Gala held in 1997, 1998, and 1999...." *See Plaintiff's Responses to Defendant's First Request for Production of Documents and First Set of Interrogatories*, p. 7, ¶17. This 48-page document lists 1997 conference attendees in various "types," including Appointed Official, Benefactor, DLC Guest, among others. One category was "Elected Officials," and Mr. Lincoln summarized that information in paragraph 20 of his Exhibit 1 as: "An October 27, 1997 document listed 35 elected officials who had confirmed their intent to attend the DLC Annual Conference. Each was a Democrat." The paragraph was followed by a chart listing the 35

5

individuals, and included a footnote that one individual had changed his party affiliation from Democrat to Republican "in or about 2001."

Rule 1006 of the Federal Rules of Evidence allows summaries of the contents of voluminous writings to be admitted into evidence. While Rule 1006 might fit best with a jury trial, there is no limitation on its use to that context. Summarizing 12,000 pages of documents evidencing an organization's activities over the years at issue is an appropriate use of a summary. The documents are available to the DLC because the DLC produced them in response to discovery requests, including a request for the DLC's documents about its 1997, 1998, and 1999 conferences. And the documents received from the DLC in response to discovery could be put into admissible format at trial by authenticating the documents and introducing them as admissions or business records. *See Phillips v. Irvin*, 2006 WL 1663677, 2006 U.S. Dist LEXIS 39871 (S.D. Ala. 2006)(motion to strike summary submitted for summary judgment denied because "the Court has every confidence that the information presented in Exhibit 18 may be packaged in admissible form at trial…").

The court has discretion in how evidence shall be admitted, including summaries, *United States v. Microsoft Corp.*, 253 F.3d 34, 100-101 (D.C. Cir. 2001), and it should exercise that discretion here. *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)("But, just as an expert can assist a jury by imparting special knowledge that helps the jury to understand technical evidence, a non-expert summary witness can help the jury organize and evaluate evidence which is

6

factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial."). The DLC has made no showing that the Lincoln Declaration is not a proper summary of the documents produced by the DLC. And the DLC has not shown the documents summarized are not voluminous. Accordingly, the Lincoln Declaration should be admitted, and the motion to strike denied.

**Mr. Lincoln is not providing an opinion.**

Finally, the DLC argues that Mr. Lincoln's testimony should be excluded for several reasons because he is providing an opinion. He is not. Mr. Lincoln is summarizing voluminous information. While the DLC challenges Mr. Lincoln as an expert, it does not point to any specific statements it contends are opinions and not summaries of the documents the DLC produced. Having failed to identify such statements in its motion, the DLC should not be allowed to characterize specific testimony in its reply brief where the United States will have no opportunity to respond. The argument based on Mr. Lincoln testifying with opinions is not supported, and irrelevant.

7

**Conclusion.**

The DLC has challenged in the Lincoln Declaration on several grounds. But it agreed with the statements cited in support of the Goverment's motion for summary judgment that relied on the Lincolnd Declaration. Moreover, the DLC has not challenged the summary under Rule 1006. Therefore, the motion to strike should be denied.

Dated: August 28, 2006

Respectfully Submitted,

/s/ Pat S. Genis
PAT S. GENIS, #446244
DAVID A. HUBBERT
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, DC 20044
Phone/Fax: (202) 307-6390/514-6866
Email: pat.genis@usdoj.gov

OF COUNSEL:

KENNETH L. WAINSTEIN
United States Attorney

<u>CERTIFICATE OF SERVICE</u>

  IT IS CERTIFIED that the foregoing **UNITED STATES OPPOSITION TO MOTION TO STRIKE DECLARATION OF TAYLOR LINCOLN** was caused to be served upon plaintiff's counsel on the 29th day of August 2006, in accordance with the Court's ECF procedures, and by depositing a copy thereof in the United States mail, postage prepaid, addressed as follows:

    ROBERT F. BAUER, ESQUIRE
    MARC E. ELIAS, ESQUIRE
    EZRA W. REESE, ESQUIRE
    Perkins Coie
    607 Fourteenth Street, NW,
    Suite 800
    Washington, DC  20005-2011.
    rbauer@perkinscoie.com


    /s/ Pat S. Genis
    PAT S. GENIS